Latham & Moss, Bill Mills Latham, Corpus Christi, for relator.

Gary, Thomasson, Hall & Marks, Shirley Selz, Corpus Christi, Larry R. Margolies, Dallas, for respondent.

**Ex parte Don GRIFFIN.**

**No. C–3358.**

Supreme Court of Texas.

Dec. 19, 1984.

CAMPBELL, Justice.

This is a habeas corpus proceeding. The trial court found Relator, Don Griffin, in contempt of court for violating a temporary injunction. He was ordered to jail for 30 days and fined $104,000, $500 for each of 208 separate violations of the temporary injunction.

We hold the large penalties ordered in this case make it a serious offense, entitling Griffin to a jury trial. Griffin was not afforded a right to jury trial and did not waive that right. Therefore, he is discharged from custody.

The temporary injunction prohibited Griffin from:

(1) selling, offering for sale, participating in or advising about a sale, or soliciting the sale of chemical specialties, germicides, cleaning chemicals, degreasers, insecticides, maintenance chemicals, spe-

cialty coatings, chemicals for turf maintenance, water treatment, air and water pollution, and related products similar to NCH Corporation's products to any account identified on the attached sealed exhibit "A" within the counties San Patricio, Nueces, Jim Wells, Brooks, and Duval; and (2) from diverting, taking away or attempting to take away the accounts identified in the sealed attached exhibit "A" within the counties of San Patricio, Nueces, Jim Wells, Brooks, or Duval.

The temporary injunction provided that it would be in effect for 24 months following July 29, 1981, or until the signing of a final judgment after a trial upon the merits. Attached to the temporary injunction judgment was Exhibit A, a seven-page listing of NCH customers and their mailing addresses. Griffin appealed from the temporary injunction, and the Court of Appeals affirmed the judgment of the trial court in an unpublished opinion.

In its motion for contempt, NCH Corporation complained that Griffin violated the temporary injunction "on multiple occasions" by selling chemical products to 25 named customers listed in the attachment to the temporary injunction during its term. It sought punishment "by a fine of $500 for each violation" and by confinement in jail for a period not to exceed six months.

Griffin asserts he should be released because: (1) he was denied a trial by jury; (2) the temporary injunction is void under Rule 683;[1] and (3) he did not have sufficient notice of the charges against him. We agree with the first contention and grant the writ of habeas corpus. Therefore, we do not address the other two issues.

■ The Sixth Amendment to the United States Constitution guarantees the right to jury trials for serious offenses, but not petty offenses. *Muniz v. Hoffman,* 422 U.S. 454, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975). We concluded in *Ex Parte Werblud,* 536 S.W.2d 542 (Tex.1976), that two

separate $500 fines in a case of constructive criminal contempt did not take the case out of the category of petty offenses.

The United States Supreme Court in *Muniz v. Hoffman, supra* 422 U.S. at 476, 95 S.Ct. at 2190, declined to hold that a jury is required where any fine greater than $500 is contemplated. Instead, the Supreme Court held it would look at the individual defendant, the seriousness of the risk and the extent of possible deprivation. Other courts have held a right to jury trial exists where potential fines exceed $500. *U.S. v. Hamdan,* 552 F.2d 276 (9th Cir. 1977) [$1,000 fine]; *Black Police Officers Assoc. v. Richmond,* 548 F.2d 123 (4th Cir. 1977) [$1,000 fine]; *Douglass v. First Nat. Realty Corp.,* 543 F.2d 894 (D.C.Cir.1976) [$5,000 fine].

We hold that a contempt action in which contemnor is fined $104,000 and ordered to jail for 30 days is a serious offense. Therefore, Griffin was entitled to a jury trial.

■ NCH Corporation contends we must presume Griffin waived his right to a jury trial because the record does not establish that he demanded a jury. However, in a contempt hearing for a *serious* offense, waiver of the right to jury trial cannot be presumed from a silent record. *See Samudio v. State,* 648 S.W.2d 312 (Tex.Crim. App.), cert denied, —— U.S. ——, 103 S.Ct. 3113, 77 L.Ed.2d 1368 (1983).

The relator is discharged from custody.

ROBERTSON, J., concurs.

GONZALEZ, J., dissents, joined by SPEARS, J.

ROBERTSON, Justice, concurring.

I reluctantly concur in the result reached by this Court. However, I am of the opinion that this case presents another example of trial by ambush. Griffin was represented by counsel of his own choosing. He remained silent throughout the contempt proceedings and never requested a jury, nor has he asserted any disputed issues of fact to be decided by a jury. Now in this

---

1. All citations to rules refer to the Texas Rules of Civil Procedure.

Court, he complains for the first time that he was denied a fundamental right because there is no record that he formally waived a jury trial.

Contempt is a unique, quasi-criminal sanction. Procedural safeguards for contempt do not derive from the Sixth Amendment to the United States Constitution, but from traditional notions of due process. *Levine v. United States,* 362 U.S. 610, 616, 80 S.Ct. 1038, 1042, 4 L.Ed.2d 989 (1960). Therefore, the full panoply of Sixth Amendment rights available to persons in ordinary criminal proceedings should not apply in contempt proceedings. I refer to my previous dissent in *Ex parte Johnson,* 654 S.W.2d 415, 422–423 (Tex.1983).

GONZALEZ, Justice, dissenting.

I respectfully dissent. I would deny the writ of habeas corpus.

Griffin claims, and the court holds, that he was denied his constitutional right to a trial by jury. Griffin must show that the lack of a jury trial was fundamental error, since he did not request one prior to trial.

Contempt proceedings are normally considered to be either civil or criminal in character. *Ex Parte Werblud,* 536 S.W.2d 542, 545 (Tex.1976). Proceedings which are punitive in nature, punishing past infractions which affront the dignity and authority of the court, are criminal contempt proceedings. Unquestionably, the case at bar arose from such a proceeding. In criminal contempt proceedings, however, the right to a jury trial is not absolute. It is conditioned upon a characterization of the punishment imposed as being for either a "serious" or a "petty" offense. *Muniz v. Hoffman,* 422 U.S. 454, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975); *Werblud,* 536 S.W.2d at 547.

*Muniz* involved a labor union and an individual that had violated the orders of a court which was seeking to control picketing activities during a labor dispute. Prior to criminal contempt hearings these two parties *requested that they be tried before a jury.* This request was denied by the trial court. A probated sentence was sub-

sequently imposed on the individual, and a $10,000 fine was levied against the union. The *Muniz* Court addressed the right to a jury trial in the contempt proceedings, and drew a distinction between the imposition of fines and imprisonment.

With punishment by imprisonment, *Muniz* has established, and this court has approved, a "bright-line" standard by which a court may determine if the contemnor has committed a serious offense. Imprisonment for more than six months establishes that the offense is a serious one and entitles the contemnor to a jury trial as a matter of constitutional right. *Muniz,* 422 U.S. at 475–6, 95 S.Ct. at 2190; *Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974). *Werblud,* 536 S.W.2d at 547. Moreover, the right to a jury trial in contempt proceedings is dependent solely on the actual punishment imposed, rather than the punishment possible. *Taylor,* 418 U.S. at 496, 94 S.Ct. at 2702; *Werblud,* 536 S.W.2d at 547.

The delineation of "serious" and "petty" offenses becomes much more difficult when a fine is imposed against a contemnor. The courts in *Muniz* and in *Werblud* declined to establish a "bright line" rule to aid a trial court in its determination of the distinction between the two types of offenses when a fine is involved. Some subsequent cases indicate that a $500 fine assessed against an individual is the dividing line between serious and petty offenses. *See United States v. McAlister,* 630 F.2d 772 (10th Cir.1980); *Girard v. Goins,* 575 F.2d 160 (8th Cir.1978); *United States v. Hamdan,* 552 F.2d 276 (9th Cir. 1977). *Douglass v. First Nat'l Realty Corp.,* 543 F.2d 894 (D.C.Cir.1976). These opinions seemingly draw a distinction between those cases in which a fine is assessed against an individual and those involving other legal entities. *See McAlister,* 630 F.2d at 774.

*Muniz,* on the other hand, does not offer the clear guidance which these courts would provide. In considering a statute which authorized the same punishment for

contempt as Tex.Rev.Civ.Stat.Ann. art. 1911a, § 2, the court stated that

... it is one thing to hold that deprivation of an individual's liberty beyond a six-month term should not be imposed without the protection of a jury trial, but it is quite another to suggest that, regardless of the circumstances, a jury is required where any fine greater than $500 is contemplated.

*Muniz,* 422 U.S. at 477, 95 S.Ct. at 2191. This distinction between punishment by fine and punishment by imprisonment led the court to state that the two are "intrinsically different." *Id.*

*Hamdan* and its progeny assert that they properly draw a distinction between individual contemnors and other entities based on the facts of *Muniz* ($10,000 fine assessed against labor union with 13,000 members). *See Hamdan,* 552 F.2d at 279. *Muniz* does not suggest such a distinction. The *Muniz* court stated that the argument that a $10,000 fine posed a "serious risk" to a large union was "untenable." *Muniz* 422 U.S. at 477, 95 S.Ct. at 2191. Indeed, *Muniz* seems to require an inquiry by the court into the financial ability of the contemnor to pay the imposed fine before the court is bound to declare an offense a "serious" one entitling the contemnor to the constitutional right to trial by jury. *Muniz,* 422 U.S. at 476–8, 95 S.Ct. at 2190–91. In *Werblud,* this court acknowledged *Muniz* and recognized that a $1,000 total fine did not necessitate a trial by jury, as it remained in the category of petty offenses. *Werblud,* 536 S.W.2d 542.

In the instant case the trial court imposed a fine of $104,000 against Griffin: $500 for each of the 208 violations of the injunctive order against him. The court fails to note that Griffin's gross revenues from the prohibited sales totaled over $96,-000, representing a profit of over $67,000. When balanced against the amounts Griffin would not have realized had he not violated the clear order of the trial court, the $104,-000 fine is reduced to a net fine of just $8,000. The punitive effect of the fine and the ability of the contemnor to pay may be considered in light of the revenue raised through a violation of the order of the court. *U.S. v. Troxler Hosiery Co., Inc.,* 681 F.2d 934 (4th Cir.1982) (gross revenue —$60,000; profit—$15,000; fine—$80,000 plus costs); *Musidor, B.V. v. Great American Screen,* 658 F.2d 60 (2nd Cir.1981), *cert. denied,* 455 U.S. 944, 102 S.Ct. 1440, 71 L.Ed.2d 656 (1982) (2 sales in violation of injunction—gross revenue of $60,000–75,-000 at one of the sales; fine—$10,000 for each violation).

In light of the net fine imposed, it is doubtful that Griffin was absolutely entitled to a jury trial as a constitutional right. It is not clear that such a right even exists in civil proceedings to assess criminal contempt punishments through fines. The question was expressly left open by the Supreme Court in *Muniz* in such a way as to indicate that the existence of that right is as open to question as the extent of that right. *See Muniz,* 422 U.S. at 476, 95 S.Ct. at 2190.

Griffin had been ordered not to sell to these companies; he knew that if he violated this order he would be held accountable for his actions; and still, he wilfully affronted the dignity and authority of the court by engaging in prohibited sales.

Since Griffin did not demand a jury trial, this court has had to resort to the questionable doctrine of "fundamental error" to reverse the judgment. This court assumes that the trial court would have denied Griffin a jury trial had he requested one. Griffin has had a fair and impartial hearing. I would therefore remand him to the Sheriff of San Patricio County.[1]

SPEARS, J., joins in this dissenting opinion.

---

1. Relator was released on bond pending this appeal.