**Ex parte Chris S. JOHNS, Relator, Appellant.**

**No. 05-90-01464-CV.**

Court of Appeals of Texas, Dallas.

Jan. 22, 1991.

Reyburn U. Anderson, Dallas, for appellant.

Ellen Abbott, Dallas, for appellee.

Before WHITHAM, THOMAS and WHITTINGTON, JJ.

## OPINION

THOMAS, Justice.

In this habeas corpus proceeding, relator Chris S. Johns was held in contempt of court for failure to pay child support. The trial court ordered relator committed to jail for three days for each of the 218 violations or until he paid the child support arrearage of $90,140.50. Relator contends that the judgment of contempt and his commitment are void because: (a) he was deprived of his right to a jury trial; (b) his former spouse failed to meet her burden of proof concerning his ability to pay the arrearage; (c) the decree of divorce is not enforceable by contempt because it is ambiguous; and (d) there is no valid order of commitment. Finding no merit in relator's arguments, we deny the application.

## CATEGORIZING THE JUDGMENT OF CONTEMPT

Relator categorizes this as a criminal contempt proceeding and contends that he is incarcerated under a "criminal" commitment order. On this basis, he argues that he should be released because: (a) he was denied a jury trial; and (b) his former spouse had the burden of establishing his ability to pay the child support arrearage and she failed to do so. It is necessary to first determine whether this order is civil or criminal in nature because the proper classification is dispositive of these arguments. The distinction between civil and criminal contempt is based on the nature and purpose of the penalty imposed. *In re Rumaker*, 646 F.2d 870, 871 (5th Cir.1980). In a civil contempt matter, the court is attempting to persuade the contemnor to obey a previous order. *Smith v. Sullivan*, 611 F.2d 1050, 1053 (5th Cir.1980); *Ex parte Harrison*, 741 S.W.2d 607, 609 (Tex. App.—Austin 1987, orig. proceeding). Civil contempt provides for remedial punishment. A judgment which provides that a contemnor is to be committed unless and until he performs the affirmative act required by the court's order is a civil contempt order. This type of conditional penalty is civil because it is designed to compel the doing of some act. *See Hicks v. Feiock*, 485 U.S. 624, 108 S.Ct. 1423, 1429–32, 99 L.Ed.2d 721 (1988). Because the contemnor can avoid incarceration by obeying the court's order, the phrase has been coined that a civil contemnor "carries the keys of his imprisonment in his own pocket." *See Shillitani v. United States*, 384 U.S. 364, 368, 86 S.Ct. 1531, 1534, 16 L.Ed.2d 622 (1966); *Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex.1976). In these matters, a judge can impose either a fine or imprisonment, or both, so long as the imprisonment is conditional. Further, it is possible in a civil proceeding to impose a determinate sentence so long as the order contains a "purge clause." *See Shillitani*, 384 U.S. at 370 n. 6, 86 S.Ct. at 1536 n. 6.

■ Conversely, a criminal contempt order is punitive in nature and is an exertion of the court's inherent power to punish a contemnor for "some completed act which affronted the dignity and authority of the court." *Werblud*, 536 S.W.2d at 545. In criminal contempt proceedings, commonly referred to as "punitive," the contemnor is being punished for his improper actions "and no subsequent voluntary compliance on the part of the defendant can enable him to avoid punishment for his past acts." *Ex parte Hosken*, 480 S.W.2d 18, 23 (Tex.Civ.App.—Beaumont 1972, orig. proceeding). Here too, a judge can impose a fine or imprisonment, or both. However, the distinguishing feature is that the penalty is unconditional. *See also* Kilgarlin & Ozmun, *Contempt of Court in Texas—What You Shouldn't Say to the Judge*, 38 BAYLOR L.REV. 291, 297–98 (1986) (a discussion of the distinctions between civil and criminal contempt).

The order in issue states, in pertinent part:

> IT IS THEREFORE ORDERED that Relator is committed to the county jail of Dallas County, Texas, for a period of 3 days for each separate violation enumerated above *or until Relator has paid $90,140.50 through the Dallas County Child Support Agency, the child support arrearage.*

(emphasis added). Thus, relator is to be confined for 654 days unless he pays the child support arrearage of $90,140.50. If the arrearage is paid, he will be immediately released from jail. Because of the harshness of this punishment, relator contends that this constitutes a criminal commitment order.

■ While we agree that this is a burdensome order given the length of the commitment and the amount of the arrearage, we do not agree that these facts alter the classification of the contempt. The fact of punishment and the severity of punishment is not the determining factor in distinguishing civil from criminal contempt. Imprisonment obviously is punitive. It will, however, be viewed as remedial or coercive if the court imposes a conditional release upon the contemnor's willingness to comply with the court order. The Supreme Court has stated the test as: "what does the court primarily seek to accomplish by imposing sentence?" *Shillitani*, 384 U.S. at 370, 86 S.Ct. at 1535. Looking at the nature and purpose of the penalty imposed in this matter, it is apparent that the trial court is exerting its "considerable judicial authority to persuade, or coerce" relator to comply with the previous order and that upon his doing so, he will be immediately released from jail. Beginning in 1982, relator stopped making the court ordered child support payments and began a course of conduct of making sporadic payments or no payments at all. Thus, relator's actions in failing to comply with the child support order and allowing the arrearages to accrue are the reason that the punishment is so severe. Because of the conditional nature of this order, we conclude that relator is confined pursuant to a civil contempt order.

## RIGHT TO JURY TRIAL

■ Having determined the character of the order, we turn to relator's assertion that he was entitled to a jury trial because the imposition of this "harsh" sentence constitutes a serious offense, citing *Ex parte Griffin*, 682 S.W.2d 261 (Tex.1984). While there is no absolute right to trial by jury in contempt proceedings, the Supreme Court has determined that a contemnor possesses such a right in *criminal* contempt cases where the punishment assessed is "serious." *See Muniz v. Hoffman*, 422 U.S. 454, 476–77, 95 S.Ct. 2178, 2190–91, 45 L.Ed.2d 319 (1975). Six months imprisonment and/or a $500 fine has become the normal measure for distinguishing petty offenses from serious offenses. A contempt is regarded as "petty" where the punishment does not exceed six months imprisonment or a $500 fine. *See Werblud*, 536 S.W.2d at 546. Conversly, if a greater punishment is assessed, the proceeding is normally classified as "serious." *See Griffin*, 682 S.W.2d at 262.

Obviously, a jail sentence of almost two years constitutes a "serious" matter.

However, relator's argument fails and his reliance upon *Griffin* is misplaced. In *Griffin*, the trial court issued a criminal contempt order assessing 30 days in jail and imposing a fine of $104,000 ($500 for each of 208 separate violations). The Texas Supreme Court held that this constituted a serious case and ordered Griffin discharged because he had not been afforded a jury trial and he had not waived his right to one. *Griffin*, 682 S.W.2d at 262. While the *Griffin* court did not specifically address whether the contempt order was civil or criminal in nature, the facts demonstrate that it was a punitive commitment order. Since our order is one for civil contempt, not punitive contempt, *Griffin* is inapplicable.

A contemnor's right to a jury trial in civil contempt matters was addressed by the United States Supreme Court in *Shillitani*. In this matter, contempt proceedings were instituted against two witnesses after they refused to testify before a grand jury. Neither witness was indicted or given a jury trial. After a finding of guilt, the trial court sentenced both to two years' confinement with the proviso that if either answered the questions before his sentence ended, he would be released. The Court held that the conditional nature of these sentences rendered each of the actions a civil contempt proceeding; thus, an indictment and jury trial were not constitutionally required. *Shillitani*, 384 U.S. at 365, 86 S.Ct. at 1533. In explaining a court's power to enforce compliance of lawful orders through civil contempt, the Court stated: "The conditional nature of the imprisonment—based entirely upon the contemnor's continued defiance—justifies holding civil contempt proceedings absent the safeguards of indictment and jury...." *Shillitani*, 384 U.S. at 370–71, 86 S.Ct. at 1535–36 (citations omitted). Because relator's confinement is conditional, we hold that he was not entitled to a jury trial.

## BURDEN OF PROOF OF INABILITY TO PAY

The justification for coercive imprisonment in civil contempt depends upon the ability of the contemnor to comply with the court's order. *See Shillitani*, 384 U.S. at 371, 86 S.Ct. at 1536. In this connection, relator asserts that his former spouse had the burden of proof to establish that he had the ability to pay the child support arrearage and that she failed to do so. In support of his position, relator relies upon *Hicks*, 108 S.Ct. 1423. Rather than providing support for relator's position, *Hicks* demonstrates that his arguments are without merit. In *Hicks*, the Supreme Court reviewed a California child support contempt order. Under state law, there was a statutory presumption that an obligated parent remained able to make the required child support payments. Further, ability to pay was an element of the offense of contempt. The Court held that the statutory presumption would violate the due process clause in a *criminal* contempt proceeding because it would impose upon a respondent the burden of disproving an element of the movant's cause of action. *Hicks*, 108 S.Ct. at 1432. The Court went further and stated that if applied in a *civil* proceeding, the statute would be constitutionally valid. *Hicks*, 108 S.Ct. at 1433. The issue of whether ability to pay is an element of contempt or inability to pay is a defense to a motion for contempt was left up to the individual states.

In Texas, the obligor bears the burden of establishing the defense of inability to pay. *See Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex.1967); *Ex parte Kollenborn*, 154 Tex. 223, 276 S.W.2d 251, 253 (1955); *Ex parte Mulkey*, 776 S.W.2d 308, 311 (Tex.App.—Houston [1st] 1989, orig. proceeding). Existing case law was codified in 1987 by the enactment of section 14.40(g) of the Texas Family Code, which provides:

(g) Inability to Pay. It is an *affirmative defense* to an allegation of contempt of court or of the violation of a condition of probation requiring payment of court-ordered support that the obligor lacked the ability to provide support in the amount ordered, lacked property that could be sold, mortgaged, or otherwise pledged to raise the funds needed, attempted unsuccessfully to borrow the needed funds,

and knew of no source from which the money could have been borrowed or otherwise legally obtained.

TEX.FAM.CODE ANN. § 14.40(g) (Vernon Supp.1991) (emphasis added). Thus, relator had the burden of establishing that he was unable to pay the child support arrearage.[1]

 The only witness to testify on the merits of the motion was relator's former spouse, who established a prima facie case of contempt. Relator invoked his fifth amendment privilege and did not testify. Thus, he produced no evidence of his inability to purge himself from contempt.

## AMBIGUITY OF THE DIVORCE DECREE

 Relator further asserts that this Court should order his release because the decree of divorce setting forth his obligation to pay child support is not sufficiently clear to support contempt. We disagree. The decree states in pertinent part:

and it is accordingly ORDERED THAT:

. . . . .

5. Relator shall pay as contribution to the support of the parties' minor children, to Petitioner, through the Offices of the Dallas County Government Center, Dallas, Texas, $529.50 per child per month (which includes $29.50 for health care insurance), in two equal installments per month, with the first installment due on November 1, 1981, and a like installment due on each 15th and 1st day of *the month thereafter*, and reasonable and necessary, non-elective medical care for said children *until a child with respect to whom payments are being made reaches 18 years of age, dies,* ...

(emphasis added). Relator first states that "The court, in the original Decree of Divorce, instead of *ordering* the Relator to pay child support for the minor children, merely states that Relator *shall* pay." Thus, he contends that the decree is merely directive and is insufficient to sustain a motion for contempt. Relator cites no legal authority in support of this contention, perhaps because he recognizes that it is without legal merit. This decree "orders" that relator "shall" pay child support. Thus, it is clearly a "command directed" to him rather than a "mere declaration of the occurrence of an event in which he may be involved." *See Ex parte Snow,* 677 S.W.2d 147, 149 (Tex.App.—Houston [1st Dist.] 1984, orig. proceeding). The language in the decree was sufficient to apprise relator of his duty to pay child support.

 Relator next argues that because the word "the" is placed before "month thereafter," he was actually ordered to pay only four child support payments: November 1, 1981, November 15, 1981, December 1, 1981, and December 15, 1981. It is contended that the use of the word "the" renders the decree ambiguous and unenforceable by contempt under *Ex parte Slavin,* 412 S.W.2d 43, 44 (Tex.1967). In order for a person to be held in contempt for disobeying a court order, the order must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him. *Ex parte Blasingame,* 748 S.W.2d 444, 446 (Tex.1988); *Ex parte Slavin,* 412 S.W.2d at 44. In determining whether an order is ambiguous, we view the decree as a whole. *See Ex parte Linder,* 783 S.W.2d 754, 757 (Tex.App.—Dallas 1990, orig. proceeding); *Ex parte Malone,* 788 S.W.2d 411, 412 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding); *Ex parte McManus,* 589 S.W.2d 790, 793 (Tex. Civ.App.—Dallas 1979, orig. proceeding).

Relator's interpretation that the decree requires only four child support payments is not supportable when the order is viewed in its entirety. This decree orders relator to make child support payments and to pay reasonable and necessary non-elective medical expenses incurred by his children until a child "with respect to whom *payments* are being made" reaches eighteen

---

1. In civil contempts, a relator must establish that *at the time of the contempt hearing* it is not within his power to perform the act which will purge him from contempt. *See Rohleder,* 424 S.W.2d at 892.

years, dies, or a terminating event under the Family Code occurs, at which time *payments* to such child shall cease (emphasis added). The word "payments" obviously refers to the child support payments relator was ordered to pay, and these "payments" were to continue until a child reached the age of 18, died, or until a terminating event under the Family Code occurred. To adopt relator's strained interpretation would mean that this Court would ignore our obligation to review the document as a whole. Courts are not required to dispense with common sense when reviewing orders; but rather, we are to look at the normal language. *Malone*, 788 S.W.2d at 412. Further, as this Court has previously stated, while a decree must be clear, specific and unambiguous, "[the order] need not be full of superfluous terms and specifications adequate to counter any flight of fancy a contemner may imagine in order to declare it vague." *McManus*, 589 S.W.2d at 793. We hold that this decree is not reasonably subject to different interpretations, and thus that it is sufficiently clear, specific, and unambiguous to satisfy all due process requirements.

### COMMITMENT ORDER

The final basis for relief is relator's contention that there is no valid commitment order because the attachment and commitment in contempt issued by the district clerk's office was not signed. It is well settled that a contemnor may not be confined to jail without a written judgment of contempt and a written commitment order. *Ex parte Amaya*, 748 S.W.2d 224, 225 (Tex.1988); *Ex parte Martinez*, 160 Tex. 328, 331 S.W.2d 209, 210 (1960); *Ex parte Snow*, 677 S.W.2d at 147; *Ex parte Spencer*, 508 S.W.2d 698, 700 (Tex.Civ.App. —Texarkana 1974, orig. proceeding). The contempt judgment finds that the contemnor has refused to obey a lawful order of the court and assesses punishment. *See* Tex.Fam.Code Ann. § 14.33(a) (Vernon Supp.1991) (statutory requirements for the contents of an enforcement order). The order of commitment is made for the purpose of enforcing a contempt judgment by directing the imprisonment of the contemnor; it is a warrant order of process by which a court directs an officer to take a person to jail and detain him there. *Ex parte Crawford*, 684 S.W.2d 124, 128 (Tex. App.—Houston [14th Dist.] 1984, orig. proceeding). However, there is no particular form prescribed by law for an order of commitment. *See Ex parte Barnett*, 600 S.W.2d 252, 256 (Tex.1980). In *Barnett*, the court stated that "the directive that a person be placed in jail and detained may be contained in an authenticated copy of the court's judgment or in a separate order signed by the judge or by the clerk of the court at the judge's direction." *Ex parte Barnett*, 600 S.W.2d at 256.

In this case, the trial court signed an instrument styled, "ORDER HOLDING RESPONDENT IN CONTEMPT FOR FAILURE TO PAY CHILD SUPPORT GRANTING JUDGMENT, AND FOR COMMITMENT TO COUNTY JAIL." This contempt judgment contains the following pertinent language:

> IT IS THEREFORE ORDERED THAT RELATOR IS COMMITTED TO THE COUNTY JAIL OF DALLAS COUNTY, TEXAS, FOR A PERIOD OF 3 DAYS FOR EACH SEPARATE VIOLATION ENUMERATED ABOVE OR UNTIL RELATOR HAS PAID $90,140.50 THROUGH THE DALLAS COUNTY CHILD SUPPORT AGENCY, THE CHILD SUPPORT ARREARAGE.
>
> IT IS FURTHER ORDERED that each period of confinement assessed herein shall run and be satisfied consecutively.

We have previously held that this type of recitation constitutes a directive that a person be placed in jail and detained and that a contempt judgment with this language also constitutes a valid commitment order. *See Ex parte Linder*, 783 S.W.2d at 757. Since relator's contempt judgment included a commitment order, the writ of commitment issued by the district clerk's office was not necessary for a valid incarceration. We hold that all due process requirements have been satisfied.

As set forth in our December 17, 1990 order, the application for writ of habeas

corpus is denied, and relator is remanded to the custody of the Sheriff of Dallas County, Texas, for confinement pursuant to the trial court's contempt judgment and commitment order dated November 26, 1990.