COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




 
 
  
  
  
  
 IN RE:  R. JEANETTE HAMMOND,
  
                             Relator.
  
  
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
  
 No. 08-03-00400-CV
  
 AN ORIGINAL PROCEEDING
  
 IN HABEAS CORPUS
 
 




 

O
P I N I O N

R. Jeanette Hammond filed a petition
for writ of habeas corpus in this Court, seeking to be
discharged from confinement pursuant to a trial court order holding her in
contempt for failing to pay child support. 
On August 29, 2003, this Court granted the writ and ordered her
discharged upon the posting of a $100 bond. 
For the reasons that follow, we overrule the issues raised by Hammond in
this proceeding.  Therefore, we will remand
her to the custody of the El Paso County Sheriff.

Factual and
Procedural Background








Hammond and Wiley F. James, III, are
the parents of a daughter.  On June 1,
2001, they agreed to an order that requires Hammond to pay James $443.57 per
month in child support.  The order
further provides that if James determines that their daughter=s best interest would be served by
attending private school or by receiving tutoring, he is authorized to enroll
her in a private school of his choice or to make arrangements for tutoring, and
Hammond must pay 50 percent of the costs. 
Hammond must also pay 50 percent of their daughter=s uninsured medical expenses.

James later filed a motion in the
171st Judicial District Court to enforce the order and to hold Hammond in
contempt.  He alleged that Hammond had
violated the order by failing to pay child support or to reimburse him for
uninsured medical expenses and private school tuition.  James requested that Hammond be held in civil
contempt for disobeying the order.

On August 14 and 15, 2003, the
parties appeared along with counsel for a hearing on James=s motion.  On August 15, the trial court signed an order
holding Hammond in criminal and civil contempt. 
The court determined that Hammond was in arrears on her child support
obligation in the amount of $5,866.19, was in arrears on her obligation for
private school tuition in the amount of $6,623.68, and was in arrears on her
obligation to pay uninsured medical expenses in the amount of $1,284.75.  The total arrearage was $13,774.62.








Hammond failed to make fifteen child
support payments, two payments for private school expenses, and seventy-two
payments for uninsured medical expenses. 
In assessing punishment for criminal contempt, the court sentenced her
to sixty days in jail for each of these eighty-nine violations, to be served
consecutively.  In sanctioning Hammond
for civil contempt, the court ordered Hammond to be confined until she pays the
total arrearage of $13,774.62 and James=s attorneys= fees in the amount of
$17,000.28.  But the court suspended her
commitment until August 28 and provided that if she paid the total arrearage
and the attorneys= fees by that date, she would not go to jail.

Because Hammond failed to pay the
amount due by August 28, she was committed to jail on that date.  On August 29, she filed a petition for writ
of habeas corpus and was released from jail by order of this Court, upon the
posting of a $100 bond.

The case was subsequently transferred
from the 171st Judicial District Court to the 383rd Judicial District
Court.  On November 8, 2003, the 383rd
Judicial District Court signed a nunc pro tunc order.  This
order is substantially similar to the August 28 order, except that it does not
contain a finding of criminal contempt.

Hammond=s Arguments

Hammond argues that she was denied
her right to a jury trial and that she was denied due process because she does
not have the ability to pay the amounts ordered by the trial court, she was not
allowed an opportunity to present evidence of her inability to pay, and the
trial court failed to make a finding that she had the ability to pay.  She also argues generally that her
confinement is illegal, unconstitutional, excessive, cruel, and unusual, and an
abuse of discretion.








Standard of
Review

In a habeas corpus proceeding, the
guilt or innocence of the relator is not an
issue.  Ex parte Kimsey, 915 S.W.2d 523,
525 (Tex. App.--El Paso 1995, orig. proceeding).  The only issue is the legality of the relator=s confinement.  Id.  A writ of habeas corpus will not issue if
a contempt order is merely erroneous.  Ex parte Swate,
922 S.W.2d 122, 124 (Tex. 1996). 
But a writ will issue if the order is void.  Id.; Kimsey,
915 S.W.2d at 525. 
In the context of a habeas proceeding, a contempt order is void if it is
beyond the power of the court to enter or if it deprives the relator of liberty without due process of law.  Swate, 922 S.W.2d at 124; Kimsey,
915 S.W.2d at 525.  The relator bears the burden of showing entitlement to relief
in a habeas corpus proceeding.  Kimsey, 915 S.W.2d at 525.

Regarding evidentiary challenges, we
do not have jurisdiction to assess the witnesses= credibility or to weigh the
evidence.  Ex parte Hightower, 877 S.W.2d 17, 20 (Tex. App.--Dallas
1994, orig. proceeding).  We may
only determine whether the trial court=s contempt finding is so completely
without evidentiary support that it deprives the relator
of liberty without due process of law.  Id.

Right to a
Jury Trial








In her first issue, Hammond argues
that she was denied her right to a jury trial. 
When a contemnor has a right to a jury trial, the record must show that
the court informed her of the right and that she affirmatively waived that
right.  Ex parte
Sproull, 815 S.W.2d 250, 250 (Tex. 1991); Ex parte Casillas, 25 S.W.3d
296, 299 (Tex. App.--San Antonio 2000, orig. proceeding); Ex parte Levingston, 996 S.W.2d
936, 938 (Tex. App.--Houston [14th Dist.] 1999, orig. proceeding).  We cannot presume that a jury was waived when
the record is silent on the matter.  Sproull, 815 S.W.2d at 250;
Casillas, 25 S.W.3d at 299; Levingston, 996 S.W.2d at 938.

There is no absolute right to a jury
trial in a contempt proceeding.  See Muniz v. Hoffman, 422 U.S. 454, 475-77, 95 S.Ct. 2178, 2190-91, 45 L.Ed.2d 319 (1975); Ex parte Werblud, 536 S.W.2d
542, 546-47 (Tex. 1976); Casillas, 25 S.W.3d
at 299.  A person held in civil
contempt is not entitled to a jury trial. 
Shillitani v. United States, 384 U.S. 364, 370-71, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966); Ex parte Johns, 807 S.W.2d 768, 772 (Tex. App.--Dallas
1991, orig. proceeding).  The
right generally attaches only when the contemnor is held in criminal contempt and
assessed a serious punishment.  See
Muniz, 422 U.S. at 476-77, 95 S.Ct. at 2190; Werblud, 536 S.W.2d at 546-47.  Confinement for more than six months is
considered serious punishment.  See Sproull, 815 S.W.2d at 250; Werblud,
536 S.W.2d at 546-47; Casillas,
25 S.W.3d at 299.  Confinement for six
months or less, on the other hand, is considered petty and does not entail a
right to a jury trial.  Werblud, 536 S.W.2d at 546;
Casillas, 25 S.W.3d at 299.  But even if the contemnor is sentenced to no
more than six months= confinement for each of several contumacious acts, the
punishment is considered serious if the sentences must be served consecutively
and they add up to more than six months= confinement.  Ex parte
Sanchez, 703 S.W.2d 955, 957 (Tex. 1986); Casillas,
25 S.W.3d at 299.








A judgment that orders a contemnor
confined unless and until she performs some act is a judgment of civil
contempt.  Hicks ex rel. Feiock v. Feiock, 485 U.S. 624, 631-32, 108 S.Ct.
1423, 1429, 99 L.Ed.2d 721 (1988); Johns, 807 S.W.2d at 770.  Unlike confinement for civil contempt,
confinement for criminal contempt is for a definite period and is
unconditional; there is nothing the contemnor can do to purge herself of the
contempt.  Hicks, 485 U.S. at
631-32, 108 S.Ct. at 1429; Johns, 807 S.W.2d at 771.

In this case, the trial court
initially held Hammond in both criminal and civil contempt.  The court ordered her confined for sixty days
for each of the eighty-nine separate violations of the prior order.  Furthermore, the sixty-day sentences were to
be served consecutively.  Because this
adds up to a sentence of 5,340 days in jail, or more than fourteen and a half
years, Hammond had a right to a jury. 
Yet there was no jury, and there is nothing in the record before this
Court to reflect that Hammond was informed of her right to a jury trial or that
she affirmatively waived that right. 
Accordingly, the portions of the August 15 and August 28 orders that
held Hammond in criminal contempt are void.

We note that the trial court
attempted to replace these orders with the November 8 nunc
pro tunc order, which eliminated the criminal
contempt provisions.  Hammond argues that
the nunc pro tunc
order is ineffective because it does more than correct clerical errors in the
earlier orders and was not signed within the period of the trial court=s plenary power.  See Tex.
R. Civ. P. 329b(f).








Rule 329b, which limits a trial court=s plenary power to alter a judgment,
does not apply to contempt orders.  See
Ex parte Anderson, 900 S.W.2d 333, 335 n.1 (Tex.
1995) (orig. proceeding).  Therefore, the
nunc pro tunc
order would not be rendered ineffective by the court=s failure to sign it within the usual
period of plenary power.[1]








The supreme court
has held that a trial court cannot enter a new contempt judgment after a habeas
proceeding has been filed in an appellate court.  See, e.g., Anderson, 900 S.W.2d at
334-35 (holding that a trial court could not enter a new contempt judgment that
corrected the earlier judgment=s failure to state how the contemnor could purge himself
because the new judgment was not signed close enough in time to the original
pronouncement of contempt); Ex parte Delcourt, 888 S.W.2d 811, 812 (Tex. 1994) (orig.
proceeding) (holding that a trial court could not enter a new contempt judgment
that included additional violations while a habeas proceeding was pending in
the appellate court because the new judgment was not signed close enough in
time to the original pronouncement of contempt); Ex parte
Barnett, 600 S.W.2d 252, 256-57 (Tex. 1980) (orig. proceeding) (holding
that a trial court could not correct its failure to enter a written judgment at
the time the contemnor was confined by entering a written contempt judgment
eighty days later and that after the supreme court granted the writ of habeas
corpus the trial court lost jurisdiction over the contemnor).  In these cases, the trial court=s rulings worked to the disadvantage
of the contemnor.  In this case, the nunc pro tunc order
benefitted Hammond by eliminating the finding of
criminal contempt.  We find it
unnecessary to decide whether a trial court can modify its contempt judgment to
benefit the contemnor while a habeas proceeding is pending.  Regardless of whether the nunc
pro tunc order validly eliminated the finding of
criminal contempt, the portions of the earlier orders finding Hammond in
criminal contempt are void and ineffective because Hammond=s right to a jury trial was violated.

With the elimination of the criminal
contempt finding, only the finding of civil contempt remains at issue.  Hammond was not entitled to a jury trial
before being found in civil contempt.  See
Levingston, 996 S.W.2d at 938; Johns, 807 S.W.2d at 772.  Hammond=s first issue is overruled.[2]

Inability to
Pay








In her second issue, Hammond asserts
that she is unable to pay the child support. 
A person cannot be incarcerated indefinitely for civil contempt if she
does not have the ability to perform the condition required for release.  Ex parte
Rojo, 925 S.W.2d 654, 655-56 (Tex. 1996).  Consequently, a person cannot be held in
contempt for failing to pay child support if she establishes that she: (1)
lacked the ability to provide support in the amount ordered; (2) lacked
property that could be sold, mortgaged, or otherwise pledged to raise the
needed funds; (3) attempted unsuccessfully to borrow the needed funds; and (4)
knew of no source from which the money could have been borrowed or legally
obtained.  Tex. Fam. Code Ann. ' 157.008(c) (Vernon 2002).  A contemnor is not entitled to habeas relief
based on this statute unless she conclusively established all four elements in
the trial court.  See Rojo, 925 S.W.2d at 656; Hightower,
877 S.W.2d at 20.

The record reveals that when the
parties agreed to the June 2001 order, Hammond was earning $2,500 a month as a
teacher.  In September 2002, Hammond
began working as an attorney for $3,206 a month.  She still had this position at the time of
the August 14-15 hearing.  Hammond
testified, however, that she was working under a provisional license in New
Mexico and that her current position was going to end in October 2003 because
she had not taken the New Mexico bar examination.  She claimed that she did not have the money
to take the examination.  She had applied
for about fifteen legal jobs.    She
still had a Texas law license.  At the
August 28 hearing, Hammond informed the trial court that she had lost her job
because of the contempt finding.








In June 2001, Hammond had housing
expenses because she was estranged from her current husband, Charles, and they
were not living together.  But she and
Charles reconciled in the summer of 2002. 
Since that time, Hammond has lived in a ranch house that is apparently
owned by a corporation in which Charles and two of his family members are the
only shareholders.  The Hammonds do not
pay rent or make mortgage payments on the ranch house.

From August 2002 through July 2003,
the Hammonds received between $17,000 and $20,000 of oil and gas income.  The Hammonds also benefit from a net
operating loss that relieves them of paying federal income tax for several
years into the future.  Jeanette Hammond
owns a one-third undivided interest in at least 640 acres of land that would be
valued at more than $100 an acre.  She tried
to borrow money using that land as collateral, but was unsuccessful.  She also tried to sell it to her sister and
mother, the owners of the remaining interests in the land, but they refused to
purchase it.








Hammond testified that she did not
have any property that she could sell or mortgage or any other source of money
or property from which she could obtain funds and that she was not able to
borrow the money necessary to pay the child support arrearage.  She claimed that she has already sold all of
her jewelry and furniture, some items she inherited from her grandmother, and
some art.  When asked by her attorney why
she was unable to pay child support during the period in which the arrearages
accrued, she testified, AMy expenses had increased.  My income had gone down pretty substantially.@ 
She stated that her husband had health expenses associated with
diabetes.   Hammond also testified that
when she agreed to the June 2001 order, she hoped that her income would go up
to $58,000.

From this review of the record, we
cannot say that Hammond conclusively established the four elements of section
157.008(c).  Nor can we say that the
trial court=s finding that Hammond has the
ability to pay is so completely without evidentiary support that it amounts to
a denial of due process.  There was
evidence from which the trial court could infer that Hammond=s financial situation has actually
improved since June 2001.[3]   The trial court could have also questioned
the Hammonds= credibility.  For example, Hammond testified that she did
not remember having a $16,000 ring that she had admitted having in 1999.  She later testified that she sold a ring for
$16,000 in 1999.   Additionally, the
testimony of Hammond and her husband regarding the ownership of the ranch was
confusing.  Hammond claimed that she did
not know whether Charles had any ownership interest in the ranch.  We must defer to the trial court on matters
of credibility.  Hammond=s second issue is overruled.

Opportunity
to Present Evidence








In her fourth issue, Hammond argues
that she was denied the opportunity to present evidence regarding a change in
her financial circumstances and her inability to pay the child support.  She does not specify how she was denied this
opportunity or what evidence was erroneously excluded.  We have reviewed the record and have found no
support for Hammond=s assertion.  At the
August 14-15 hearing, Hammond was represented by counsel, who called her
husband, Charles, to testify on her behalf. 
We do note that the trial court excluded the only exhibit that Hammond=s counsel sought to admit.  This exhibit showed the child support
payments that Hammond had made from July 2001 to June 2002 and the percentage
of her net income that the payments represented.  This exhibit would have done nothing to
establish that Hammond was unable to pay the child support at the time of the
hearing or during the period in which the arrearages occurred.  Hammond had a different job at the time of
the hearing than she had during the period covered by the exhibit.  Moreover, with the exception of a few
payments totaling less than $500, the finding of contempt was based on Hammond=s failure to pay child support and
tuition between June 2002 and August 2003.

At the August 28 hearing, Hammond,
representing herself, requested to put some documents on the record Afor appellate purposes.@ 
The trial court denied this request.  
There is nothing in the record to show that these documents related to
any change of circumstances that had occurred since August 15.  Furthermore, because Hammond expressly
offered the documents only Afor appellate purposes,@ it is not even clear that she
intended the documents to be considered by the trial court.








In short, we conclude that the record
does not support Hammond=s claim that she was denied the opportunity to present
evidence of a change in her financial circumstances or of her inability to
pay.  Hammond=s fourth issue is overruled.

Hammond=s Remaining
Arguments

In a supplemental brief, Hammond
argues that the trial court failed to make a ruling on the record that Hammond
had the ability to pay the child support and the attorneys= fees assessed against her.  This argument is without merit.  Hammond does not cite any authority that the
trial court has to make an express finding of the contemnor=s ability to pay.  See Tex.
Fam. Code Ann. ' 157.166 (Vernon 2002) (setting out
the required contents of an enforcement order). 
In any event, the trial court did make such a finding.  At the conclusion of the hearing on August
15, the trial court implicitly found that Hammond had the ability to pay when
it stated, AI just didn=t see anything that amounted to--that
came up to a level of one of the defenses that you might have.@ 
The August 28 and November 8 orders both recite that Hammond has the
ability to pay the child support. 
Attorneys= fees incurred in enforcing a child support order are part of
the child support obligation and may be enforced by contempt.  See id. ' 157.167(c); Ex parte Helms, 152 Tex. 480, 486, 259 S.W.2d 184, 188
(1953); In the Interest of Gonzalez, 993 S.W.2d 147, 158 (Tex. App.--San
Antonio 1999, no pet.).  We
overrule this issue.

We also overrule Hammond=s third issue, which asserts that her
confinement is illegal, unconstitutional, excessive, cruel and unusual, and an
abuse of discretion.  Hammond has not
established any of these assertions.








Conclusion

For the reasons stated herein, we
remand Hammond to the custody of the El Paso County Sheriff to be held
until:  (1) she purges herself by paying
the amounts set forth in the order signed on August 28, 2003 by the 171st
Judicial District Court in cause number 89-6831, under the heading ACivil Contempt,@ or (2) until further order of the
383rd Judicial District Court in cause number 89-6831.

 

SUSAN
LARSEN, Justice

January 15, 2004

 

Before Panel No. 3

Barajas, C.J., Larsen, and
Chew, JJ.

 











[1]In
any event, the nunc pro tunc
order was signed within the usual period of plenary power.  Hammond filed a timely motion for new trial
on September 15, 2003, which, as far as our records reflect, was not overruled
by a written order.  See Tex. R. Civ. P.
329b(a).  When a
motion for new trial is not overruled by a written order, it is deemed
overruled by operation of law seventy-five days after the judgment was signed,
and the trial court has plenary power to alter the judgment for thirty days
after the deemed overruling.  Tex. R. Civ.
P. 329b(c), (e).  A trial court is not limited to correcting
clerical errors when it alters a judgment during the period of its plenary
power.  See Tex. R. Civ. P.329b(e),
(f).





[2]Hammond
argues in a supplemental brief that she was also entitled to a jury trial
because James filed a jury request and paid the fee.  She relies on Rule 220 of the Texas Rules of
Civil Procedure, which provides, AWhen any party has paid the fee for a jury trial, he shall
not be permitted to withdraw the cause from the jury docket over the objection
of the parties adversely interested.@  By its terms, this rule requires a party
relying on another party=s
jury request to object to the removal of the case from the jury docket.  Here, Hammond appeared in person and through
counsel and proceeded to try the issues with no objection to the absence of a
jury.  Therefore, she waived her right
under Rule 220.  See In the Interest
of A.M., 936 S.W.2d 59, 61 (Tex. App.--San Antonio 1996, no writ); Lambert
v. Coachmen Indus. of Tex., Inc., 761 S.W.2d 82, 85 (Tex. App.--Houston
[14th Dist.] 1988, writ denied).





[3]Although
Hammond stated at the August 28 hearing that she had lost her job because of
the contempt finding, the trial court could have reasonably concluded that this
change in circumstances was not material, as Hammond=s
job was already set to terminate in October 2003.