# NO. 12-12-00395-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | § | |
| *JOE DAVID ROGERS,* | § | *ORIGINAL PROCEEDING* |
| *RELATOR* | § | |

## *MEMORANDUM OPINION*

In this original habeas proceeding, Relator Joe David Rogers seeks to set aside the contempt order signed November 14, 2012, by the Honorable Randall Lee Rogers, Judge of the County Court at Law Number 2, Smith County, Texas. We deny habeas corpus relief.

## BACKGROUND

Relator and Kelsey Cameron Neal, the real party in interest, are the parents of two minor children. Neal sought and obtained a family violence protective order against Relator, which was signed on August 28, 2012. Approximately two months later, Neal filed a motion for enforcement of the protective order by contempt, alleging that Relator had violated the protective order on twenty-four separate occasions. After notice and a hearing, the trial court found Relator in contempt and, on November 14, 2012, signed the contempt order that is the subject of this proceeding.

The findings included in the contempt order describe twenty-five separate violations of the protective order. The trial court found that on twenty-three occasions (violations 1 through 15, 17 through 22, 24, and 25), Relator "engaged in conduct directed specifically toward KELSEY CAMERON NEAL including following KELSEY CAMERON NEAL that is reasonably likely to, and did in fact, harass, annoy, alarm, abuse, or torment KELSEY CAMERON NEAL." The court further found that, on two additional occasions (violations 16

and 23), Relator "communicated directly with KELSEY CAMERON NEAL in a threatening manner." As punishment, Relator was ordered confined to the Smith County jail for a period of one hundred eighty days for each of the twenty-five violations, with the periods of confinement to run and be satisfied concurrently. Relator is presently confined in the Smith County jail pursuant to an order of commitment issued by the trial court. He has filed an original and an amended petition for habeas corpus, as well as a motion for emergency relief, in this court.

## AVAILABILITY OF HABEAS CORPUS

A writ of habeas corpus is available to review a contempt order signed by a lower court confining a contemnor. *Ex parte Gordon*, 584 S.W.2d 686, 687-88 (Tex. 1979). An original habeas proceeding is a collateral attack on a contempt judgment. *Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex. 1967); *In re Ragland*, 973 S.W.2d 769, 771 (Tex. App.–Tyler 1998, orig. proceeding). Its purpose is not to determine the ultimate guilt or innocence of the relator, but only to ascertain whether the relator has been unlawfully confined. *Ex parte Gordon*, 584 S.W.2d at 688.

A court will issue a writ of habeas corpus if the order underlying the contempt order is void or if the contempt order itself is void. *See Ex parte Shaffer*, 649 S.W.2d 300, 301-02 (Tex. 1983); *Ex parte Gordon*, 584 S.W.2d at 688. The relator bears the burden to show the contempt order is void, not merely voidable, and thus conclusively show his entitlement to the writ. *In re Taylor*, 130 S.W.3d 448, 449 (Tex. App.–Texarkana 2004, orig. proceeding). An order is void if it deprives the relator of liberty without due process of law. *Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex. 1980) (orig. proceeding).

Where a trial court finds multiple instances of contempt, but one or more of those are invalid and the order does not separately assess punishment for each violation, the entire order is void. *See Ex parte Davila*, 718 S.W.2d 281, 282 (Tex. 1986) (orig. proceeding). Conversely, if the court assesses punishment separately for each violation, only the invalid portion of the contempt judgment is void and the remainder of the judgment is enforceable. *In re Newby*, 370 S.W.3d 463, 470 (Tex. App.–Fort Worth 2012, orig. proceeding).

## THE CONTEMPT JUDGMENT

Relator asserts that his procedural due process rights were violated because the contempt

order includes a basis of confinement (violation 25) that was not included in the motion for enforcement or the show cause order. Essentially, he complains that the contempt finding relating to violation 25 is void because the conduct described occurred after the motion for enforcement was filed. He also argues that the underlying protective order is not clear, specific, and unambiguous as to Relator's duties and responsibilities. According to Relator, these defects render the contempt order void.

**Violation 25**

Contempt of court is disobedience to or disrespect of a court by an action in opposition to its authority. *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995). Direct contempt involves disobedience or disrespect that occurs within the presence of the court. *Id*. Constructive contempt occurs outside the court's presence. *Id*. The distinction between direct and constructive contempt is important because it determines the procedural protections that must be afforded. *Ex parte Gordon*, 584 S.W.2d at 688; *Ex parte Werblud*, 536 S.W.2d 542, 546 (Tex. 1976) (orig. proceeding).

A person, such as Relator, who is faced with constructive contempt charges is entitled to full and complete notification of the subject matter and "when, how, and by what means he has been guilty of the alleged contempt." *Ex parte Edgerly*, 441 S.W.2d 514, 516 (Tex. 1969) (orig. proceeding). A sufficiently specific motion requesting that an order be enforced by contempt provides the requisite notice. *See* *Ex parte Carney*, 903 S.W.2d 345, 346 (Tex. 1995) (per curiam) (orig. proceeding) (contempt order void because motion for contempt not sufficiently specific and show cause order merely referred to motion).

A motion for contempt is comparable to an indictment or information and complaint charging several different misdemeanors. *Ex parte Chunn*, 933 S.W.2d 534, 535 (Tex. App.–Houston [1st Dist.] 1995, orig. proceeding). A criminal defendant in a misdemeanor case may not be convicted of an offense that occurs after the date of filing of the information. *Ex parte Oliver*, 736 S.W.2d 277, 278 (Tex. App.–Fort Worth 1987, orig. proceeding). Similarly, a trial court finding that an alleged contemnor is guilty of an offense occurring after the filing of a motion for enforcement is void. *Ex parte Chunn*, 933 S.W.2d at 535; *Ex parte Oliver*, 736 S.W.2d at 278-79.

Here, the motion for enforcement was filed on October 15, 2012. According to the finding in the contempt judgment, violation 25 occurred "[o]n or about November 2, 2012[,]"

3

which was eighteen days after the motion for enforcement was filed. Neal argues, however, that the following statement in her motion for enforcement gave Relator reasonable notice that he would be held in contempt for subsequent conduct that violated the protective order:

> Movant believes, based on the conduct of Respondent, that Respondent will continue to fail to comply with the order. Movant requests that Respondent be held in contempt, jailed, and fined for each failure to comply with the order of the Court from the date of this filing to the date of the hearing of this motion.

This same argument, based upon similar language in a motion for enforcement, has been rejected by at least one court, and we reject it as well. *See Ex parte Chunn*, 933 S.W.2d at 535 (allegation that "Movant believes that Respondent will continue to disobey the Orders of the Court by not paying the monthly mortgage notes due in June, 1995; July, 1995; and August, 1995[]" insufficient to permit contempt for violation occurring after motion for enforcement was filed). Accordingly, we hold that because violation 25 is based on conduct that occurred after the motion for enforcement was filed, the trial court's contempt finding relating to that violation is void.

**Language of the Protective Order (violations 1 through 15, 17 through 22, and 24)**

It is well established that for a person to be held in contempt for disobeying a court order, the order must spell out the details of compliance in clear, specific, and unambiguous terms so that the person will readily know exactly what duties or obligations are imposed upon him. *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex. 1967) (orig. proceeding). The order must "carry with it no uncertainty, and must not be susceptible of different meanings or constructions, but must be in the form of a command, and, when tested by itself, must speak definitely the meaning and purpose of the court in ordering." *Ex parte Duncan*, 62 S.W. 758, 760-61 (Tex. Crim. App. 1901). This is so because "[t]he rights of the parties under a mandatory judgment whereby they may be subjected to punishment as contemnors for a violation of its provisions, should not rest upon implication or conjecture[.]" *Id*.

A court order is insufficient to support a judgment of contempt only if its interpretation requires inferences or conclusions about which reasonable persons might differ. *Ex parte Chambers*, 898 S.W.2d at 259. However, the order "need not be full of superfluous terms and specifications adequate to counter any flight of fancy a contemnor may imagine in order to declare it vague." *Ex parte McManus*, 589 S.W.2d 790, 793 (Tex. Civ. App.–Dallas 1979, orig.

proceeding). Our review of an order is not limited to the phrases alleged to be vague; we consider the trial court's order as a whole in determining whether the challenged language is ambiguous. *See* ***Ex parte Johns***, 807 S.W.2d 768, 773 (Tex. App.--Dallas 1991, orig. proceeding).

Two provisions in the protective order are the source of controversy here. The first (the general conduct provision) prohibits Relator from "engaging in conduct directed specifically toward KELSEY CAMERON NEAL including following KELSEY CAMERON NEAL that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass KELSEY CAMERON NEAL." The second (the communication provision) prohibits Relator from "communicating directly with KELSEY CAMERON NEAL in a threatening or harassing manner."

**1. General conduct provision (violations 1 through 15, 17 through 22, and 24).** Based upon our reading of the protective order, it is clear that the trial court expected Relator and Neal to communicate with each other. In fact, Relator and Neal were ordered to subscribe to Our Family Wizard and to use it to arrange exchanges of the children and "facilitate communications between the parties." The order also contains three provisions relating to communications between Relator and Neal. These provisions prohibit Relator from (1) communicating directly with Neal in a threatening or harassing manner, (2) communicating a threat through any person to Neal, and (3) communicating in any manner with Neal, except through Respondent's attorney or through Our Family Wizard. It is clear from these provisions that Relator is prohibited from directly communicating with Neal except as specified in the order and from communicating threats to her by any means.

Other provisions of the order relate specifically to "conduct." The general conduct provision, which is at issue here, prohibits Relator from "engaging in conduct directed specifically toward KELSEY CAMERON NEAL including following KELSEY CAMERON NEAL that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass KELSEY CAMERON NEAL." This expressly prohibits Relator from following Neal, and other provisions specify additional prohibited conduct, such as going within certain distances of anywhere Relator knows Neal to be, and her places of employment, business, and residence.

The twenty-two communications that form the basis of the trial court's findings on violations 1 through 15, 17 through 22, and 24 were sent to Neal between September 10, 2012, and October 4, 2012, through Our Family Wizard. They consist primarily of inquiries,

5

comments, and reports about the welfare of the children. On one occasion, Relator's communication included a lengthy rendition of statistics pertaining to how children are affected when they grow up in a fatherless home, particularly if there is controversy between the parents. In several of the communications, Relator comments about aspects of his and Neal's relationship and certain personal issues that he believes need to be addressed. In others, he includes questions about the children, requests the return of certain personal property, and declines to pay child support until Neal files certain documentation. He is persistent and repeats his questions in subsequent communications if Neal does not answer them. He is also critical, in some instances, of Neal's conduct as a parent.

Although Neal, and ultimately the trial court, concluded these communications violated the protective order, nothing in the order gives Relator notice that these communications would produce such a result. With the exception of the prohibition against communicating threats to Neal, the protective order does not contain any specific limitations on the subject matter of Relator's communications with Neal. Instead, the order directs Relator to avoid "conduct" that Neal is reasonably likely to find harassing, annoying, alarming, abusive, tormenting, or embarrassing.[1] Thus, in attempting to comply with the order, Relator must anticipate whether Neal's reaction to a communication is reasonably likely to fall within one of these categories. This is a subjective standard. Consequently, interpretation of the order requires inferences or conclusions about which reasonable persons might differ.[2] *See Ex parte Chambers*, 898 S.W.2d at 259.

As we stated earlier, an order cannot support a contempt judgment unless it sets out the terms of compliance in clear, specific, and unambiguous terms so that the person charged with obeying the order will readily know exactly what duties and obligations it imposes. *Id*. The general conduct provision does not meet this standard. Therefore, this provision cannot support a contempt order. Accordingly, the trial court's contempt findings for violations 1 through 15, 17 through 22, and 24 are void.

---

[1] We will assume for purposes of this opinion that "conduct" includes communications.

[2] For example, Relator stated in his September 13, 2012 communication that "I promised the boys that I would talk to them soon the last day I saw them, 4 days ago. Can I please talk to them sometime very soon?" In his September 30, 2012 communication, Relator stated that "[i]t's much easier to just create a parenting schedule than doing singular events. To save some time in the future[.]" The trial court found that these communications violated the protective order.

6

**2. Communication provision (violations 16 and 23).** In her motion for enforcement, Neal alleged that two of Relator's communications violated the prohibition against "communicating directly with KELSEY CAMERON NEAL in a threatening or harassing manner." The trial court found that on two separate occasions (violations 16 and 23), "JOE DAVID ROGERS communicated directly with KELSEY CAMERON NEAL in a threatening manner." Neal points out that Relator does not challenge the language of this provision. Therefore, she contends, the trial court's contempt findings for these violations must stand. We agree. We have not located any argument in Relator's petition that challenges the communication provision of the protective order. Accordingly, we hold that Relator has not met his burden to show that the trial court's contempt findings for violations 16 and 23 are void.

### CONCLUSION

We have held that the trial court's contempt findings for violations 1 through 15, 17 through 22, 24, and 25 are void. However, Relator has not shown that the trial court's findings for violations 16 and 23 are void. In this case, the trial court assessed punishment separately for each violation. Therefore, only the invalid portion of the contempt judgment is void and the remainder of the contempt judgment is enforceable. Accordingly, we **deny** Relator's amended petition for writ of habeas corpus. However, we **modify** the following sections of the contempt order to read as follows:

**Contempt Findings**
The Court finds that JOE DAVID ROGERS has violated the Court's Protective Order on two occasions as follows:
On or about October 2, 2012, JOE DAVID ROGERS communicated directly with KELSEY CAMERON NEAL, in a threatening manner.
On or about October 2, 2012, JOE DAVID ROGERS communicated directly with KELSEY CAMERON NEAL in a threatening manner.
**Relief Granted**
IT IS ADJUDGED that JOE DAVID ROGERS is in contempt for each of the two (2) separate violations of the Protective Order enumerated above.
**Criminal Contempt**
IT IS ORDERED that punishment for each of the two (2) separate violations is assessed at confinement in the county jail of Smith County, Texas, for a period of 180 days to begin on November 13, 2012.
IT IS THEREFORE ORDERED that JOE DAVID ROGERS is committed to the county jail of Smith County, Texas, for a period of 180 days for each separate violation.
IT IS ORDERED that each period of confinement assessed in this order shall run and be satisfied concurrently.

Relator's motion for emergency relief is **overruled** as moot.

7

<u>**SAM GRIFFITH**</u>
Justice


Opinion delivered December 21, 2012.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### DECEMBER 21, 2012

### NO. 12-12-00395-CV

**JOE DAVID ROGERS,**
Relator
v.
**HON. RANDALL ROGERS**,
Respondent

## ORIGINAL PROCEEDING

ON THIS DAY came to be heard the amended petition for writ of habeas corpus filed by **JOE DAVID ROGERS**, who is the relator in Cause No.12-1928-F, pending on the docket of the County Court at Law #2 of Smith County, Texas. Said amended petition for writ of habeas corpus having been filed herein on November 20, 2012, and the same having been duly considered, because it is the opinion of this Court that a writ of habeas corpus should not issue, it is therefore CONSIDERED, ADJUDGED and ORDERED that the said amended petition for writ habeas corpus of be, and the same is, hereby **DENIED.** However, we **MODIFY** the following sections of the contempt order to read as follows:

**Contempt Findings**
The Court finds that JOE DAVID ROGERS has violated the Court's Protective Order on two occasions as follows:

On or about October 2, 2012, JOE DAVID ROGERS communicated directly with KELSEY CAMERON NEAL, in a threatening manner.

On or about October 2, 2012, JOE DAVID ROGERS communicated directly with KELSEY CAMERON NEAL in a threatening manner.

**Relief Granted**

IT IS ADJUDGED that JOE DAVID ROGERS is in contempt for each of the two (2) separate violations of the Protective Order enumerated above.

**Criminal Contempt**

IT IS ORDERED that punishment for each of the two (2) separate violations is assessed at confinement in the county jail of Smith County, Texas, for a period of 180 days to begin on November 13, 2012.

IT IS THEREFORE ORDERED that JOE DAVID ROGERS is committed to the county jail of Smith County, Texas, for a period of 180 days for each separate violation.

IT IS ORDERED that each period of confinement assessed in this order shall run and be satisfied concurrently.

Relator's motion for emergency relief is **OVERRULED** as moot.  It is further ordered that **JOE DAVID ROGERS** pay all costs incurred by reason of this proceeding

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*