**In re Juan Manuel T. ZAPATA, Relator.**

No. 2–03–308–CV.

Court of Appeals of Texas, Fort Worth.

March 4, 2004.

John R. Stoutimore, Fort Worth, for relator.

Suzanne Lomenick, Dallas, for real party in interest Sandy Hernandez.

Floyd L. Fisher, Assistant Attorney General, Child Support Litigation Division, Arlington, for second real party in interest Office of the Attorney General.

PANEL B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

Relator Juan Manuel T. Zapata filed this petition for writ of habeas corpus challenging the validity of his commitment to jail following a hearing on a motion for enforcement of child support. We ordered Relator released upon the posting of a bond pending a decision in this case. *See* TEX.R.APP. P. 52.8(b)(3). We have now received the requested response from the real party in interest, Sandy Hernandez. We hold that: certain portions of the trial court's order are void and are therefore deleted; Relator's challenge to the civil contempt portion of the trial court's order is premature and cannot be addressed by us in this proceeding; and the trial court's order does not contain sufficient language to constitute a commitment order. Therefore, we order Relator immediately discharged from custody.

## BACKGROUND

### Paternity established

In an agreed "Child Support Review Order," signed on April 16, 2003, paternity was established between Relator and his daughter. Relator and the child's mother, Sandy Hernandez, were appointed joint managing conservators. Relator was ordered to pay current child support ($160/mo.), cash medical support ($18/mo.), and retroactive child support ($50/mo.).[1] The first combined payment was due May 1, 2003.[2]

### Motion To Enforce

On August 21, 2003, Hernandez filed a motion for enforcement, alleging Relator failed to pay child support, cash medical support, and retroactive child support for the payments due on the first day of May, June, July, and August 2003. Relator requested appointment of counsel, but was found not to be indigent. The hearing on Hernandez' motion for enforcement was held on October 13, 2003 before a family court master. Relator represented himself pro se.

### Trial court's contempt order

On October 13, 2003, the family court master and the district court judge signed an "Order Holding Respondent In Contempt For Failure To Pay Child Support, Granting Judgment, And For Commitment To County Jail." This is the order about which Relator complains in this habeas corpus proceeding.

In the order, the court found Relator in criminal contempt for failing to pay "child support, attorney's fees and court costs as ordered" in the amount of $160 per month for June, July, and August 2003. Relator was ordered confined in the Tarrant County jail for 180 days for each of these violations. The order further recites that "IT IS THEREFORE ORDERED that

---

1. The daughter's date of birth is December 14, 1999, and the parties agreed that retroactive child support as of April 16, 2003 would be $6,559.54.

2. Relator was also ordered to pay court costs, but payment was not due until May 1, 2004. Both parties appeared pro se; therefore, no attorney's fees were ordered paid by Relator.

[Relator] is committed to the county jail of Tarrant County, Texas, for a period of 180 days for each separate violation enumerated above" and that the periods of confinement shall run concurrently.

The order also found Relator in civil contempt and ordered him confined in the Tarrant County jail until he pays $7618.88 in child support arrearage, $148 in costs for the enforcement proceeding, and $1800 in attorney's fees for the enforcement proceeding.

The order concludes with: "IT IS ORDERED that all writs and other process necessary for the enforcement of this order be issued." No other writs or other process have been issued by the trial court or the trial court clerk. Relator was incarcerated pursuant to the trial court's order from October 13, 2003 until October 25, 2003, when he posted the writ bond set by this court.

## Habeas Corpus Review

■ The only remedy to review contempt proceedings where the Relator is in custody is by habeas corpus. *Ex parte Cardwell*, 416 S.W.2d 382, 384 (Tex.1967) (orig. proceeding). An original habeas corpus proceeding is a collateral attack on a contempt decree. *Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex.1967) (orig. proceeding). For this court to order the release of Relator, the trial court's order must be void, either because it was beyond the power of the court or because it deprived Relator of his liberty without due process of law. *See Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex.1980) (orig. proceeding).

## Is There A Valid Commitment Order?

■ Relator contends that his confinement is illegal because there is no valid commitment order. In order to satisfy due process requirements, both a written judgment of contempt and a written commitment order are necessary to imprison a person for constructive contempt of court. *Ex parte Amaya*, 748 S.W.2d 224, 224–25 (Tex.1988) (orig. proceeding). Imprisonment without a valid commitment order is a violation of due process. *Ex parte Wilson*, 797 S.W.2d 6, 7 (Tex.1990) (orig. proceeding) (holding it is well-settled that to satisfy due process requirements, a valid commitment order is essential). The directive that a person be placed in jail and detained may be contained in an authenticated copy of the court's judgment or in a separate order signed by the judge or by the clerk of the court at the judge's direction. *Barnett*, 600 S.W.2d at 256. An arrest without a written commitment order made for the purpose of enforcing a contempt judgment is an illegal restraint from which the prisoner is entitled to be relieved. *Amaya*, 748 S.W.2d at 225.[3]

Relator relies upon the case of *Ex parte Hernandez*, 827 S.W.2d 858 (Tex.1992) (orig. proceeding), in which the supreme court reiterated these basic principles and stated:

> A commitment order is the warrant, process or order by which a court directs a ministerial officer to take custody of a person. The order containing this directive need not take a particular form and may be a separate order issued by the court, an attachment or order issued by the clerk at the court's direction, or included in the contempt judgment. Although the form of the order is not important, the substance is.

---

**3.** An exception to this rule is that a person may be incarcerated for a short and reasonable time while the judgment of contempt and order of commitment are being prepared for the judge's signature. *Amaya*, 748 S.W.2d at 225; *Barnett*, 600 S.W.2d at 257.

*Id.* at 858 (emphasis added) (citations omitted). The contempt order in *Hernandez* found the Relator had violated the trial court's judgment, held him in contempt for that violation, and ordered his punishment at confinement in the county jail for 180 days and payment of a $500 fine and costs of court. *Id.* at 858–59. The supreme court held that "[t]he contempt order does not direct the sheriff or other ministerial officer to take Hernandez into custody and detain him under the terms of the judgment, nor does it direct the clerk to issue a written attachment or order of commitment to the proper officer." *Id.* at 859. The opinion concludes:

> [T]he judgment of contempt against Hernandez cannot serve as an order of commitment because it contains no directive to the sheriff or other appropriate officer, and that without an order of commitment Hernandez is not validly confined.

*Id.* at 858. The court granted the relief sought in the writ of habeas corpus and ordered the relator discharged. *Id.*

Sandy Hernandez, the real party in interest in this case, responds that there is no bar to having the commitment order and the order of contempt in one instrument, a premise with which we agree. However, that is not the issue we must resolve. We must determine whether the language in the trial court's order contains a directive to the sheriff of Tarrant County to take Relator into custody and detain him under the terms of the contempt order.

*Analysis*

The courts of appeals are not necessarily in agreement regarding the specificity and sufficiency of the "directive" language that the Texas Supreme Court has held is necessary to constitute a valid commitment order.

In *Ex parte Johns*, the trial court signed an instrument entitled "ORDER HOLDING RESPONDENT IN CONTEMPT FOR FAILURE TO PAY CHILD SUPPORT GRANTING JUDGMENT, AND FOR COMMITMENT TO COUNTY JAIL." 807 S.W.2d 768, 774 (Tex.App.-Dallas 1991, orig. proceeding). The document also ordered Johns committed to the Dallas County jail for a specified time. *Id.* The Dallas Court of Appeals held that this type of recitation "constitutes a directive that a person be placed in jail and detained and that a contempt judgment with this language also constitutes a valid commitment order." *Id.*

Citing *Johns*, the court in *In re Dotson* held that *Hernandez* was distinguishable because the *Hernandez* contempt order did not include language *committing* Hernandez to jail, whereas the *Dotson* contempt order was entitled "ORDER HOLDING RESPONDENT IN CONTEMPT FOR FAILURE TO PAY CHILD SUPPORT, GRANTING JUDGMENT, AND FOR *COMMITMENT* TO COUNTY JAIL" and ordered that "Respondent is *committed* to the county jail of Galveston County" for 30 days. *In re Dotson*, 981 S.W.2d 237, 238 & n. 2 (Tex. App.-Houston [1st Dist.] 1998, orig. proceeding).[4]

---

4. See also *In re Samuels*, which summarily cites both *Hernandez* and *Dotson* in support of its holding that the contempt order in that case was not void because it "finds relator in contempt, commits him to the county jail of Collin County, and sets forth the ways in which relator can purge himself of the con-

tempt." No. 05–03–01423–CV, 2003 WL 22332404, at *1 (Tex.App.-Dallas Oct. 14, 2003, orig. proceeding) (mem. op.). The *Samuels* opinion does not quote the exact language of the trial court's order in that case, so we do not find the opinion instructive in the instant case.

The Austin Court of Appeals has held the following language in a contempt order is sufficient to constitute a commitment order, "It is ordered that [the relator] shall be confined in the county jail of Burnet County, Texas, until [the relator] has complied with the following orders[,]" and that the contempt "may be purged by complying with all of the conditions previously breached." *In re Ross*, 125 S.W.3d 549, 554 (Tex.App.-Austin 2003, orig. proceeding). Without discussing whether this language constitutes an order by which the trial court directed a ministerial officer to take custody of the relator pursuant to *Hernandez*, the court of appeals held that this language "details to the contemner in clear, specific and unambiguous language how to gain release" from the contempt ruling, and the court overruled the relator's contention that the contempt order failed to include a commitment order. *Id.*

In *Ex parte Ustick*, the court reviewed a contempt order that ordered the relator "committed to the county jail for *180* days for each separate act of contempt" and ordered the relator "committed to the county jail until *he* pays *$1000.00* in child support arrearages." 9 S.W.3d 922, 924 (Tex.App.-Waco 2000, orig. proceeding). There was no other language or document that could be construed as a written commitment order. *Id.* In holding the contempt order in *Ustick* insufficient to meet the supreme court's standards in *Hernandez*, the court stated:

> In distinguishing *Hernandez*, the First Court in Houston claimed the difference between *Dotson*, *Johns*, and *Hernandez* was that in *Hernandez*, the order did not say that the contemnor was "committed" to jail. *Dotson*, 981 S.W.2d at 238. After reading *Hernandez*, we do not believe the term "committed" is determinative of a sufficient commitment order. The Supreme Court specifically stated that the order in *Hernandez* did not direct the sheriff or other ministerial officer to take Hernandez into custody and detain him pursuant to the contempt order. We believe this language to be dispositive in determining the sufficiency of a commitment order. Therefore, we decline to follow *Johns* and *Dotson* and follow, as we must, the lead of the Supreme Court in *Hernandez*. The enforcement order against Ustick is not sufficient as a commitment order.

*Id.* at 924–25.

In *In re Walling*, the trial court's "Order of Commitment" found the relator in contempt, set a period of confinement, and stated, "Let, therefore, commitment issue to the Sheriff of Harris County, Texas, accompanied by a signed copy of this order." No. 14–03–00558–CV, 2003 WL 21543538, at *1 (Tex.App.-Houston [14th Dist.] July 10, 2003, orig. proceeding) (mem. op.). However, the order did not actually direct anyone to take Walling into custody. *Id.* Citing *Hernandez*, the court held this was not a valid written commitment order and granted habeas relief. *Id.*[5]

---

5. We note also that the Texarkana Court of Appeals addressed this issue in *Ex parte Morrow* in which the title of the trial court's contempt order included "order of commitment," but there was no language committing the relator to jail. No. 06–02–00082–CV, 2002 WL 1301327, at *1 n. 3 (Tex.App.-Texarkana June 13, 2002, orig. proceeding) (not designated for publication). The contempt order held the relator in contempt and assessed punishment at confinement in the Gregg County jail for 90 days. *Id.* at *1. However, the appellate court held that the contempt order did not contain any "language of command, and it has no direction to any officer. Accordingly, under *Hernandez*, it cannot serve as an order committing [the relator] to jail." The court granted habeas corpus relief. *Id.* at *2.

The only factual difference between the trial court's order in the case before us and the order in the supreme court's *Hernandez* decision is that the title of our contempt order includes the phrase "And For Commitment To County Jail" and that it orders Relator "committed" to Tarrant County jail for criminal contempt. The supreme court has explained that a commitment order directs a ministerial officer to take custody of a person. The trial court's order in this case does not contain any language whatsoever directing the sheriff or any other appropriate person to take custody of Relator, and no additional document was ever signed by the trial judge or issued by the court clerk that contained the required directive. We conclude that this lack of directive is fatal to Sandy Hernandez' argument that the contempt order should also be construed as a commitment order. *See Hernandez,* 827 S.W.2d at 858–59; *Ustick,* 9 S.W.3d at 924; *Walling,* 2003 WL 21543538, at *1. Because the record does not contain any document that directs the sheriff to take custody of Relator and detain him under the terms of the contempt order, we hold Relator is being illegally restrained.

## CRIMINAL CONTEMPT

■ Relator next challenges the criminal contempt portion of the court's October 13, 2003 contempt order. If the contempt order is void, no other writ of commitment can subsequently be issued for its enforcement. *Ex parte Arapis,* 157 Tex. 627, 306 S.W.2d 884, 887 (1957) (orig. proceeding) (ordering the relator discharged because writ of commitment was functus officio[6]

but further addressing merits of the relator's complaint regarding the contempt judgment). Therefore, we address Relator's complaint that the court erred in finding Relator in contempt of court for his failure to pay attorney's fees and court costs, and that the court improperly assessed a punitive sanction for this alleged criminal contempt.

In her motion for enforcement, Sandy Hernandez alleged that Relator had not made the required payments of $228 per month for the months of May, June, July, or August 2003. These payments were for current child support ($160/mo.), cash medical support ($18/mo.), and retroactive child support ($50/mo.). In the trial court's contempt order, the court found that Relator failed to pay the child support, attorney's fees, and court costs for the months of June, July, and August 2003.[7] Sandy Hernandez acknowledges that the finding of nonpayment of attorney's fees and court costs is erroneous because Relator was never previously ordered to pay these items. She requests we reform the contempt order by striking the void provisions that do not comport with her motion for enforcement.

■ Void portions of a contempt order are capable of being severed from the valid portions of the order. *See Ex parte Roosth,* 881 S.W.2d 300, 301 (Tex.1994) (orig. proceeding) (severing provision barring good behavior credit and denying relief as to remainder of order); *In re Patillo,* 32 S.W.3d 907, 909 (Tex.App.-Corpus Christi 2000, orig. proceeding); *In re Aar-*

---

6. Functus officio means "literally 'a task performed,' and meaning in practice 'having fulfilled its purpose or discharged its duties, an officer or body is of no further use or authority.' " DICTIONARY OF MODERN LEGAL USAGE 253–54 (1987). The *Arapis* court held that the relator's arrest was functus officio because

the commitment order was executed after its return date. 306 S.W.2d at 886–87.

7. There is no finding that Relator failed to pay the cash medical support payment or the retroactive child support payment for these months.

*ons*, 10 S.W.3d 833, 834 (Tex.App.-Beaumont 2000, orig. proceeding).

We agree with Sandy Hernandez that the trial court's contempt order can be reformed so as to delete the void language. The motion for enforcement alleged Relator had failed to pay child support in the amount of $160 per month. The contempt order finds that Relator failed to pay "child support, attorney's fees and court costs as ordered" on June 1, July 1, and August 1, 2003, with $160 due on each date. The mistaken inclusion in the trial court's order of "attorney's fees and court costs" does not harm Relator because the motion for enforcement fairly apprised Relator of the allegations against him, that Sandy Hernandez was seeking a contempt finding of nonpayment of $160 per month for June, July, and August, and this is what the trial court found to be in arrears. Accordingly, we reform the trial court's order to delete the finding that Relator was ordered to pay attorney's fees and court costs and the finding that he was in contempt for failure to pay attorney's fees and court costs.

### CIVIL CONTEMPT

Relator next alleges that the civil contempt portion of the trial court's order is void because it requires him to pay as a condition of his release from jail the sum of $7,618.88 in child support arrearage, whereas the motion for enforcement alleged a total arrearage of only $1,368. He further asserts that he cannot be found in contempt for nonpayment of attorney's fees and costs assessed for the first time at the enforcement hearing. Without reviewing the merits of Relator's claim, we agree with Sandy Hernandez that Relator's challenge to the civil contempt portion of the trial court's order is premature. *See In re Mendoza*, No. 01–03–226–CV, 2003 WL 1090705, at *1 (Tex.App.-Houston [1st

Dist.] 2003, orig. proceeding) (mem. op.); *Ex parte Brown*, 875 S.W.2d 756, 761–62 (Tex.App.-Fort Worth 1994, orig. proceeding). If Relator is subsequently confined for criminal contempt and the trial court continues to confine Relator after he serves the criminal contempt portion of the trial court's order, Relator may file another petition for writ of habeas corpus at that time challenging the validity of the civil contempt portion of the order. *See Brown*, 875 S.W.2d at 761–62.

### CONCLUSION

We reform the trial court's October 13, 2003 order so as to delete the void finding that Relator was ordered to pay attorney's fees and court costs and is in contempt for nonpayment of these items. We do not address Relator's challenge to the civil contempt portion of the contempt order because such challenge is premature. We hold that because there is no commitment order, Relator is being illegally restrained, and we order him immediately discharged and the sureties on his bond discharged from liability.